UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRIAN BAILEY, )<br>)<br>      Plaintiff  )<br>)<br>     vs.  )<br>)<br>KILOLO KIJAKAZI, ACTING )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>      Defendant  ) | CAUSE NO. 1:20-CV-249 RLM |

OPINION AND ORDER

Brian Bailey seeks judicial review of the Commissioner of Social Security's July 2, 2019 decision denying his application for Supplement Security Income disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1614(a)(3)(A). The court took the matter under advisement after a hearing on March 15, and, for the following reasons, affirms the Commissioner's decision.

I. BACKGROUND

Brian Bailey filed his most recent application for disability benefits in 2017, after applications filed in 2002, 2008, and 2013 were denied. He was 44 years old when he filed in 2017, had a high school education, had worked sporadically as a "general laborer" from 1993-1998 and in 2006, but had no past relevant work the Social Security Administration defines that term, and alleged disability as of June 26, 2017 due to a learning disability, depression, and high blood pressure. His application was denied initially, on reconsideration, and following an

administrative hearing in June 2019, at which Mr. Bailey and a vocational expert, Robert Bond, testified. Mr. Bailey was represented by counsel at that hearing.

The ALJ found that in relevant part:

- Mr. Bailey had these severe impairments: learning disorder/borderline intellectual functioning; depression/mood disorder; anxiety; degenerative disc disease; and obesity.

- His impairments alone and in combination didn't meet or equal the severity of a listed impairment (specifically Listings 1.04, 12.02, 12.04, or 12.06).

- Mr. Bailey had only moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing himself;

- Mr. Bailey had the residual functional capacity to perform light work with the following limitations.  He could:

    (1) occasionally climb ladders, ropes or scaffolds, and frequently climb ramps and stairs, balance, stoop, knell, crouch and crawl.

    (2) understand, carry out, and remember simple, routine, and repetitive tasks with no production rate pace, like assembly

2

     line work, with only occasional simple work-related decision-making;

 (3) maintain attention and concentration for two-hour segments;

 (4) respond appropriately to occasional, predictable changes in the workplace;

 (5) do jobs that didn't require reading and writing as an essential part of the job; and

 (6) have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training, and occasional interactions with coworkers and the general public.

- Mr. Bailey's statements about the intensity, persistence and limiting effects of his symptoms weren't "entirely consistent" with the medical evidence, *e.g.,* Dr. V. Kamineni's Jan 19, 2018 consultative physical exam report (Exh. C4F), lumbar x-rays (Exh. C4F), the state agency physicians' and psychologists' opinions (Exhs. C2A, C4A), and other evidence in the record, *e.g.*, records from the Indiana Department of Corrections (Exh. C1F) and from the Bowen Center where he was attending group and individual therapy for substance abuse (C5F, C7F).

- The opinions offered by the consulting psychologist, D. Boen, Ph.D., following a psychological exam on August 16, 2017 were, with one

3

exception, "unpersuasive" because they were based on Mr. Bailey's representations about his symptoms, which were "drastically different" from, and inconsistent with the records from the Bowen Center and DOC, and were inconsistent with Dr. Kamineni's findings during a consultative examination in January 2018. The one exception, was Dr. Boen's opinion that Mr. Bailey could "get along with a boss", which was consistent with Mr. Bailey's treatment notes from Bowen Center, his primary care provider, and his functional reports, in which he "reported becoming irritable and frustrated with others, and sometimes struggling with misunderstanding others; [but] did not endorse any significant difficulties in getting along with authority figures". (AR 18)

- Dr. T. Miller's October 2017 "Verification of Disability Information Supplied by an Applicant for Housing Assistance" (a form on which he checked boxes indicating that Mr. Bailey had a disability that prevented him from engaging in substantial gainful activity, and a developmental disability) (AR 409-411)) was unpersuasive because "no explanation in terms of diagnoses or limits was made", "Dr. Miller's treatment records failed to reflect deficits that support this opinion", and the opinion was "inconsistent with the record overall." (AR 24).

4

- The state agency psychologists' opinions about Mr. Bailey's ability to understand, remember, and carry out simple instructions, make judgments commensurate with functions of simple, repetitive tasks, deal with changes in a routine work setting, and respond to brief supervision and interactions with coworkers were "generally consistent with the consultants' determinations", but "given the claimant's testimony regarding difficulty with reading and writing and his having assistance in completing functional reports," an additional RFC limitation was warranted precluding any jobs that required reading and writing as an essential part of the job. (AR 24-25).

- Based on Mr. Bailey's age, education, work experience, RFC, and the vocational expert's testimony, there were a significant number of jobs in the national economy that Mr. Bailey could perform, including laundry folder (approx. 75,000 jobs); hand washer (approx. 48,000 jobs; and classifier/sorter (approx. 25,000 jobs). The ALJ, accordingly, concluded that Mr. Bailey wasn't disabled within the meaning of the Social Security Act and denied his application for Supplemental Security Income. (AR26-27).

When the Appeals Council denied Mr. Bailey's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II. Discussion

The issue before the court isn't whether Mr. Bailey is disabled, but whether substantial evidence supports the ALJ's decision that he is not. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). A reviewing court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision[,]" Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160. ALJs must "sufficiently articulate their assessment of

the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

On appeal, Mr. Bailey contends that substantial evidence doesn't support the ALJ's residual functional capacity findings at step 3 of the evaluation and her findings relating to the number of jobs he could perform at step 5. More specifically he contends that:

(1) The ALJ didn't incorporate adequate mental health limitations into her RFC findings, didn't provide a "logical bridge" between the limitations she found and the evidence, "cherry-picked" facts that supported her findings, and ignored evidence that didn't. *e.g.*, the state agency psychologists' opinion that he was limited to brief supervision and interaction with others, the opinions Dr. Boen's expressed in his August 16, 2017 progress notes, an IDOC Mental Status Classification form indicating that he had a "psychiatric disorder that causes some functional impairment and requires frequent psychiatric and/or psychological services", and the vocational expert's testimony that he couldn't work if supervisors needed to assist and oversee even a third of the work day (up to 2 hours 40 minutes a day (AR 53). Citing, i.e., Scrogham v. Colvin, 765

7

>   F.3d 685, 698 (7th Cir. 2014) for the proposition that an ALJ may not ignore evidence that undercuts her conclusions.

(2)  The ALJ's findings at step 5 aren't supported because the vocational expert used a "defective and arbitrary methodology" to determine the number of jobs that Mr. Bailey could still perform.

### A. *The Vocational Expert's Testimony*

The ALJ expressly overruled the objection Mr. Bailey's counsel made to the vocational expert's numbers during the hearing, finding that Mr. Bond "adequately explained his methodology", and that Mr. Bailey's attorney "did not express any specific objections to the methodology described or provide a method that should be considered more reliable or valid." (AR 26). The record supports the ALJ's findings. *See* Hearing Transcript (AR 53-55). The vocational expert testified that he used a weighted methodology based on his experience, and that "[i]t is the standard protocol used to classify by other experts." (AR 54). Nothing in the record suggests that Mr. Bond lacked the experience needed to render an opinion on the subject, that the method he used wasn't reliable, or that he lacked credibility.

### B. *Residual Functional Capacity*

Mr. Bailey challenges only two of the ALJ's mental health limitations — the finding that he could frequently interact with supervisors and occasionally interact

with coworkers and the sufficiency of the limitations relating to concentration, persistence, and pace. His assertion that the ALJ ignored evidence of greater limitations (*e.g.* Dr. Boen's and Dr. Miller's opinions) is inaccurate. The ALJ found the evidence generally unpersuasive and sufficiently explained her reasons for doing so.

Both state agency psychologists (Maura Clark, Ph.D. and Joelle Larsen, Ph.D.) opined that: "The totality of evidence in [the] file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with changes in a routine work setting." (AR 81 and 96). The ALJ "generally agreed" with their assessments, found that the limitations were "generally consistent with the consultants' determinations", and included all but one of those limitations in her RFC — the "brief" limitation on interactions with supervisors and coworkers. She found instead that Mr. Bailey "could have *frequent* interactions with supervisors apart from what is necessary for general instruction, task completion, or training; and could have *occasional* interactions with coworkers and the general public." (AR 19, 24-25).

The Commissioner concedes that "[t]he ALJ found that Plaintiff had somewhat greater abilities in this regard than the State agency consultants," but contends that it's not "reversible error" because:

9

>   (1) The ALJ didn't adopt the state agency psychologists' opinions "in total, give them great weight, or otherwise indicate complete agreement with their determination";
>
>   (2) Mr. Bailey hasn't shown that he's incapable of frequent interactions with supervisors; and
>
>   (3) As the ALJ discussed, Mr. Bailey denied any difficulties getting along with authority figures (*e.g.* police, bosses, landlords or teachers) (AR 19, 205, 224), and "did volunteer work at a food pantry 10 hours per week, with no indication that he had difficulty interacting with supervisors (or coworkers for that matter) in this environment. (AR 20, 41-42)."

[Doc. No. 17 at p. 10].

The ALJ could have better explained her disagreement with the state agency psychologists' opinions about Mr. Bailey's ability to interact with others and found instead that he could frequently interact with supervisors and co-workers, but there is evidence in the record to support her findings, specifically Mr. Bailey's own statements and Dr. Boen's opinion that he "would be able to get along with a boss", both of which the ALJ found credible. Any error in her analysis and conclusion would be harmless under the circumstances. *See* McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011)("[W]e will not remand a case to the ALJ for

10

further specification where we are convinced that the ALJ will reach the same result.")

To the extent Mr. Bailey challenges the ALJ's findings regarding his ability to interact with co-workers, it's a matter of semantics. The state agency psychologists limited the amount of time Mr. Bailey could interact with coworkers, indicating that it had to be "brief", and there's little or no difference between "brief" and "occasional". Webster's Collegiate Dictionary defines "brief" as "short in duration, extent, or length", and "occasional" as "encountered, occurring, appearing, or taken at irregular or infrequent intervals."

Mr. Bailey's assertion that the ALJ erred by limiting him to "simple, routine, and repetitive task" when the evidence showed he had moderate limitations in concentration, persistence and pace, is inconsistent with, and unsupported by, the record. The ALJ didn't simply limit the type of tasks Mr. Bailey could perform, she found that he could: "understand, carry out, and remember simple, routine, and repetitive tasks, with no production rate pace … [and] only occasional simple work-related decision making; maintain attention and concentration for two-hour segments; and [] respond appropriately to occasional, predictable changes in the workplace." (AR 19)). Those limitations sufficiently accounted for the deficits in concentration, persistence, and pace that the ALJ found credible, that the state agency psychologists' endorsed, and that were supported by the record as a whole. *See, i.e.*, Crump v. Saul, 932 F.3d 567, 570 (7th Cir. 2019) (noting that "there is

11

no magic words requirement"); O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010) (use of specific terminology ("concentration, persistence and pace") not required when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform."); Morrison v. Saul, 806 Fed.Appx. 469, 474 (7th Cir. 2020) ("limiting [claimant] to jobs involving 'simple and detailed, one-to-five step instructions only' adequately accounted for only deficits in concentration, persistence and pace that the ALJ found supported by the record.").

III. CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's decision.

SO ORDERED.

Dated:   March 22, 2022

                                                    /s/ Robert L. Miller, Jr.  
                                                  Judge, United States District Court